A. G. Brush v. Commissioner.
A. G. Brush v. Commissioner
Docket No. 21730.
United States Tax Court
1951 Tax Ct. Memo LEXIS 351; 10 T.C.M. (CCH) 62; T.C.M. (RIA) 51021; January 18, 1951
*351 Edward J. deVerges, Esq., 719 Whitney Bldg., New Orleans, La., and T. C. Hannah, Esq., for the petitioner. J. Frost Walker, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in the income tax liability of the petitioner as follows: Year
Amount
1943
$29,261.97
1944
8,629.51
1945
55,371.05
Total
$93,262.53 The year 1942 is also involved because of the provisions of the Current Tax Payment Act of 1943. The issue in this proceeding is whether or not the petitioner is taxable on the entire net profits of the partnership known as the Mayhaw Canning Company during the years in question. Other adjustments in gross income made by the respondent are not in dispute. The petitioner filed his returns with the collector for the district of Mississippi. The record in this proceeding consists of a partial stipulation of facts, oral testimony, and various exhibits. Findings of Fact The facts which have been stipulated are found as facts. The petitioner was engaged in the business of canning various vegetable crops in Laurel, Mississippi, for many years prior to *352 1942. During the years 1928 and 1929, the petitioner and his wife, Ione N. Brush, operated a creamery and canning plant known as the Mayhaw Canning Company as general partners. They had acquired this plant upon the dissolution of the Laurel Ice and Packing Company, Inc., in which the petitioner owned 100 shares of the corporation's stock and his wife owned 200 shares. Upon the dissolution of this corporation, Mrs. Brush received $30,000 for her 200 shares, which was payable part in cash and part in the equipment and other assets which made up the creamery and canning plant. The petitioner received $15,000, partially in cash and partially in the equipment and other assets of the creamery and canning plant. On December 30, 1929, the petitioner and his wife entered into an agreement dissolving the Mayhaw Canning Company which they had been operating as partners. Under this agreement, Mrs. Brush transferred to the petitioner her one-half interest in the business in exchange for real estate valued at $10,000. After the petitioner acquired sole ownership of the company, he continued its operation as a sole proprietorship. The canning plant usually was in operation from the beginning *353 of April until the middle of December, during which time two 10-hour shifts were worked each day. The vegetable crops canned were turnip greens, spinach, snap beans, peas, and sweet potatoes. The plant was generally closed from the middle of December until the beginning of April. However, during this time the petitioner did some work contacting farmers and contracting for their next season's produce. In 1939 the petitioner entered into a contract with the Southern Shell Fish Company, Inc. (hereinafter referred to as "Southern"), under which the petitioner agreed to sell to Southern at least 50 per cent of its production, and Southern agreed to buy from the petitioner all the canned goods which the petitioner was willing to supply to Southern. Whatever part of the canning plant's production which was not sold to Southern was sold primarily in the town of Laurel under the petitioner's own brand name. During 1940 and 1941, Southern made various requests to the petitioner to increase the volume of the products which he was canning for Southern under Southern's label. However, the petitioner had difficulty in obtaining sufficient vegetable produce to satisfy Southern's requests. Early *354 in 1942, the petitioner considered converting his business into a partnership in association with Leon Montague, who at the time was secretary of the Rotary International in Chicago, but who had had agricultural experience in Kansas. The petitioner did not inform Montague of his plans but asked Montague to visit him, at which time they could discuss matters of mutual interest. While on a speaking tour, Montague visited the petitioner. However, nothing definite was discussed at this meeting, and the petitioner did not inform Montague of his plans. The petitioner's wife, Ione, objected to the petitioner's forming a partnership with an outsider and suggested that she would be willing to become a partner in the business herself. Mrs. Brush also suggested that, if the petitioner desired additional help in the business, their son-in-law, Stroud Stephens, probably would be willing to go to work in the business. Upon being offered a position with the company, Stephens agreed to take the job and began work on March 1, 1942, as superintendent of the night shift in the canning plant. Between March 1, 1942, and September 15, 1942, the petitioner discussed the formation of a partnership with *355 his wife. During this time the canning plant was doing more business that it had ever done before. On September 15, 1942, the petitioner and his wife signed an agreement which provided for the formation of a partnership to take over the business which the petitioner had been operating as a sole proprietorship. This agreement provided, inter alia, as follows: "This contract and agreement, made and entered into on this the 15th day of September, A.D., 1942, by and between A. G. Brush of Laurel, Mississippi, and his wife, Mrs. Ione Brush, also of Laurel, Mississippi, for the purchase by the said Mrs. Ione Brush of a one-half undivided interest in and to the canning business of the said A. G. Brush conducted under the firm name of Mayhaw Canning Company, and for an operation of the said business hereafter by the said owners as partners, Witnesseth: * * *
"Whereas, the said business is growing and developing and the said A. G. Brush is without male heirs and desires to have his wife become familiar with the said business and become associated with him in the operation thereof, to the end that she may prepare herself to take up the management of the said business in the event of *356 the disability or death of the said A. G. Brush; and, "Whereas, the said Mrs. Ione Brush was heretofore interested in the said business and desires to acquire an undivided one-half interest in the said business with her husband and to be associated with him hereafter as an equal partner, with the proviso that a salary shall be allowed the said A. G. Brush commensurate with his duties as manager and that such salary or salaries shall be paid to the said Mrs. Ione Brush as may be mutually agreed upon between the parties and commensurate with such services as she may hereafter render; and "Whereas, it is difficult to determine the profits earned by the said business up to this date during the year 1942, on account of the fact that the said A. G. Brush are kept on an annual basis to-wit: on the calendar year basis; and, "Whereas, the said parties have agreed on a fair consideration for the said business and that a purchase of a one-half interest in the said business by the said Mrs. Ione Brush shall relate back to January 1, 1942, so that the said Mrs. Ione Brush will be entitled to one-half of the profits for the year 1942, after an allowance is made to the said A. G. Brush of a *357 fair salary for his services as manager: "Now, therefore, in consideration of the premises, and in consideration of the payment by the said Mrs. Ione Brush to A. G. Brush of the sum Thirteen Thousand, Nine Hundred, Fifty-seven Dollars and Ninety-seven Cents ($13,957.97), the receipt of which is hereby acknowledged, and in further consideration of the assumption of the said Mrs. Ione Brush of one-half of the obligations of the said business conducted by the said A. G. Brush under the said name of Mayhaw Canning Company: now, it is mutually agreed between the parties hereto as follows, to-wit: "1. That the said A. G. Brush does hereby sell, transfer, assign and set over to the said Mrs. Ione Brush a one-half undivided interest in all of the assets of the Mayhaw Canning Company. * * *
"3. It is mutually agreed between the parties hereto that the said A. G. Brush shall be allowed to take from the profits of the business of the Mayhaw Canning Company for the year 1942, the sum of $6,400.00 for his services up to September 1, 1942, and hereafter the said A. G. Brush shall be allowed the sum of $800.00 per month, to-wit: the sum of $800.00 per month for September, 1942, and to *358 a like sum each month hereafter until the said compensation shall be changed by mutual agreement, and that all net profits shall be divided between the parties hereto on a basis of fifty per cent to the said A. G. Brush and fifty per cent to the said Mrs. Ione Brush. "4. It is mutually agreed between the parties hereto that the said business will be conducted in the future as in the past with the said A. G. Brush as manager, and that the said A. G. Brush shall be allowed reasonable compensation for his services as such manager and which shall be at the said rate of $800.00 per month until the same shall be changed by mutual agreement, and that if the said Mrs. Ione Brush shall render any services to the said partnership, then she shall be allowed such compensation as may be agreed upon between the parties hereto for such services so rendered. "5. All net profits after the allowance of salaries and other expenses of the business, which said salaries shall include compensation to the parties for services rendered, shall be divided between the parties hereto on said basis of fifty per cent to the said A. G. Brush and fifty per cent to Mrs. Ione Brush." * * *
On January 1, 1942, the *359 petitioner's capital account in the sole proprietorship, after adjustments for stock, bonds, and insurance policies on his life which were not made part of the partnership's assets, and for his 1941 income tax which was paid out of the assets of the business, showed a credit balance of $27,915.95. Under the partnership agreement entered into on September 15, 1942, the parties agreed that the capital of the partnership should be $27,915.95. The petitioner's capital account, therefore, was debited with $13,957.97, and a capital account was set up for Mrs. Brush with a credit of $13,957.97. As her contribution to the capital of the partnership, Mrs. Brush transferred to the petitioner a house valued at $5,800 which she owned, a mortgage note owned by Mrs. Brush, of which she was the payee, in the amount of $4,100, and $900 in cash. A note for $3,157.97 payable to the petitioner was executed by Mrs. Brush for the balance. This note was later repaid by Mrs. Brush out of the profits of the business. Prior to December 31, 1942, petitioner paid all of the expenses of his family, usually making payment by checks drawn on the bank account of the business. After December 31, 1942, the charges *360 made to the petitioner's drawing account constantly decreased. Beginning with April 1943, almost the only charges to the petitioner's drawing account were for personal insurance premiums, investments, and taxes. Mrs. Brush made withdrawals from the business whenever she desired. Beginning with April 1943, many of the personal and household bills of the petitioner and his family, which had previously been charged to the petitioner's drawing account, were charged to his wife's drawing account on the books of the company. In addition, Mrs. Brush made withdrawals from the business with which she purchased for herself such items as jewelry, silverware, savings bonds, and substantial presents for her children and grandchildren. Prior to the formation of the partnership in question, she had not made such purchases. Mrs. Brush exercised dominion and control over her share of income of the partnership in the taxable years. Mrs. Brush rendered no services to the sole proprietorship from 1930 up to September 15, 1942. From September 15, 1942, through 1945, Mrs. Brush supervised the quality control of the products canned during the periods in which the canning plant was in operation. This work *361 included, primarily, the sample inspection of the canned goods to determine whether their quality met certain standards; whether they were correctly labeled; and whether their weights were accurate. In order to perform this work, Mrs. Brush generally went to the plant during the morning and the afternoon, staying several hours each time. Before September 15, 1942, control over the quality of the products had been supervised by the petitioner. After Mrs. Brush assumed this work, the petitioner spent more time contacting farmers and inducing them to plant crops which the Mayhaw Canning Company was desirous of canning. The management of the business and the formulation and execution of its policies were primarily under the control of the petitioner. On occasion, however, when the petitioner was absent from the business, Mrs. Brush would assume responsibility for the making of final decisions about the operation of the canning plant. After September 15, 1942, Mrs. Brush was held out to the trade as a partner in the Mayhaw Canning Company. On March 29, 1945, Mrs. Brush and the petitioner, "trading as Mayhaw Canning Company," executed a five-year, 4 per cent promissory note to secure *362 a loan of $6,000 from Southern. From 1940 through 1945, the net earnings of the business were as follows: Year
Amount
1940
$ 4,857.78
1941
24,233.84
1942
72,286.38
1943
72,286.49
1944
35,697.53
1945
133,136.89
In 1946 the Mayhaw Canning Company was converted into a corporation. Upon the formation of the corporation, the petitioner received 53.07 per cent of the outstanding stock, and his wife received 46 per cent of the outstanding stock in exchange for their interests in the Mayhaw Canning Company. The petitioner in good faith and acting with a business purpose intended to join together with his wife, Ione, in the present conduct of the partnership known as the Mayhaw Canning Company after September 15, 1942. Opinion The issue in this proceeding is whether the petitioner is taxable on the entire net income of the business for the years in question, 1942, 1943, 1944, and 1945, or whether he is taxable on only 50 per cent of the income of the business. The respondent has determined that the petitioner's wife was not a bona fide partner in the business, and he has included in the petitioner's income all of the earnings of the Mayhaw Canning Company *363 for the four years which are involved. The correctness of this determination depends upon whether or not the petitioner acting in good faith and with a business purpose intended to join together with his wife in the present conduct of the business. . We have found as an ultimate fact, upon consideration of all the evidence that the petitioner did so intend, and that a valid partnership was created on September 15, 1942. The evidence in this proceeding discloses that the petitioner became desirous early in 1942 of converting the business which he conducted under a sole proprietorship into a partnership. He gave consideration to forming a partnership with Leon Montague. However, his wife objected and suggested that the petitioner take her into partnership with him and that she should participate in the operation of the business. The petitioner discussed the formation of such partnership with his wife over a period of several months, and on September 15, 1942, they signed an agreement of partnership. In exchange for a one-half interest in the business, Mrs. Brush paid to the petitioner $13,157.97, which was made up of property having *364 a value of $10,000 and a promissory note for $3,159.97 which was executed by Mrs. Brush. After the formation of the partnership on September 15, 1942, Mrs. Brush rendered valuable services to the business and participated actively in the conduct of the business in a substantial way. Also, she was known as a partner to everyone connected with the Mayhaw Canning Company. The primary service performed by Mrs. Brush was the supervision of the quality control of the products which were canned. This is a vital part of the process of canning foods. Before this function was assumed by Mrs. Brush, the necessary control over the quality of the products had been supervised by the petitioner. After this work was taken over by Mrs. Brush, the petitioner was able to and devoted more of his time contacting farmers and inducing them to plant crops which the Mayhaw Canning Company was desirous of canning and to contract for the sale of their products to the company. Although the petitioner continued to manage the business and to be responsible primarily for the formulation and the execution of business policies, Mrs. Brush, from time to time when petitioner was absent from the business, assumed responsibility *365 for the making of final decisions about the operation of the canning plant. Mrs. Brush exercised dominion and control over the share of the profits which were credited to her on the books of the partnership. For example, she made withdrawals of cash whenever she desired; she used substantial sums of the money which she withdrew for the purchase of savings bonds and personal property; and she made gifts to her children and to her grandchildren, which she had not done before the formation of the partnership. The evidence shows that a change in the economic position of the petitioner took place under the arrangements whereby the petitioner gave up and his wife acquired a 50 per cent interest in the business. The petitioner and his wife had a real intent to carry on the business as partners after September 15, 1942. It is held that the respondent erred in including in the petitioner's gross income all of the earnings of the business subsequent to that date. Cf. . The income of the Mayhaw Canning Company from January 1, 1942, up to September 15, 1942, however, was earned by the petitioner alone, conducting the business as a sole *366 proprietorship. Income must be taxed to the person who earns the income. . The assignment of the right to receive income which already has been earned does not operate to relieve the assignor from the inclusion in his gross income of the income so assigned. . The parties shall agree upon and compute, under Rule 50, the amount of the net earnings of the business prior to September 15, 1942, when it was conducted by the petitioner as a sole proprietorship, and subsequent to September 15, 1942, when it was operated by the partnership. Decision will be entered under Rule 50.